IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ADRIAN VINSON,** *pro se* | * | |
| | * | |
| Petitioner | * | |
| | * | |
| v. | * | Civil No. **PJM 18-1407** |
| | * | (Related to Criminal No. PJM **16-248-03**) |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| Respondent | * | |
| | * | |

## MEMORANDUM OPINION

*Pro se* Petitioner Adrian Vinson has filed a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255. He claims that his Sixth Amendment right to counsel was violated because his counsel's assistance with regard to pleading and sentencing was ineffective. ECF No. 246. In particular, Vinson argues that counsel should have challenged the applicability of three provisions under the United States Sentencing Guidelines (USSG) that were part of the Government's recommendation as to Vinson's sentencing range. *Id.* For the reasons set forth below, the Court **DENIES** the Motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In April and May of 2016, Vinson conspired with four other individuals (Raymond Dexter Parker, Nathan Antonio Davis, Wayne Ellis Hampton, and Tavon Lee Crews) and one undercover agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to steal 10-12 kilograms of cocaine from a drug "stash house." ECF No. 177 at 5-6. Vinson agreed to commit the robbery and confirmed in recorded statements to the undercover ATF agent that he intended to pose as a police officer to enter the stash house and take the cocaine. *Id.* at 6. Upon

-1-

Vinson's arrest on May 4, 2016, law enforcement recovered a ski mask, gloves, and three firearms from the scene. *Id.*

On May 18, 2016, Vinson was charged by indictment with Conspiracy to Possess with the Intent to Distribute Cocaine (Count One) and Conspiracy to Possess Firearms in Furtherance of a Drug Trafficking Crime (Count Three). *Id.* at 5. On December 22, 2016, he pled guilty to Counts One and Three pursuant to a plea agreement with the Government, *id.*, which the Court reviewed with Vinson during a Rule 11 plea colloquy. ECF No. 283.

The plea agreement provided a calculation of Vinson's appropriate sentencing range under the USSG. ECF No. 163 at 4. The calculations included a USSG § 4B1.1 career offender enhancement as to Count One, because Vinson had previously been convicted of two controlled substance offenses (one under District of Columbia law and one under federal law). *Id.* The career offender enhancement resulted in a total offense level for Vinson of 34 and a criminal history category of VI, including a three-level reduction to account for Vinson's acceptance of responsibility and cooperation with law enforcement. The calculation for Count Three included a base offense level of 24 in accordance with USSG § 2K2.1(a)(2), based on Vinson's two prior controlled substance convictions; a two-level increase under USSG § 2K2.1(b)(1) because the offense involved three or more firearms; and an additional six-level increase for using a stolen firearm in connection with another crime. *Id.* Under the USSG, Vinson's grouped sentence for Counts One and Three would have been between 262 and 327 months. USSG Ch.5, Pt.A (Nov. 2016).

Notwithstanding these calculations, the plea agreement proposed a sentencing range of between 144 and 180 months. ECF No. 163 at 5. On May 11, 2017, the Court sentenced Vinson to 156 months imprisonment. ECF No. 206.

## II. ANALYSIS

Vinson has moved under 28 U.S.C. § 2255 to vacate his sentence, claiming that he was unconstitutionally denied his right to the effective assistance of counsel. ECF Nos. 245, 246. A Section 2255 claim on this basis requires that a petitioner prove (1) that counsel's performance was deficient and (2) that the petitioner was prejudiced by counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner bears the burden of proving both prongs of the *Strickland* test by a preponderance of the evidence. *See Hall v. United States*, 30 F.Supp. 2d 883, 889 (E.D. Va. 1998) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967)).[1]

### A) DEFICIENT REPRESENTATION

A petitioner first must demonstrate that his counsel's performance fell below an "objective standard of reasonableness." *See Strickland*, 466 U.S. at 688. Courts generally indulge "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Advising a client to plead guilty or reject a plea deal on the basis of a plainly incorrect interpretation of the law is outside the range of reasonable professional assistance. *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012) (granting habeas petition after counsel incorrectly advised client he could not be convicted of assault with intent to murder); *United States v. Lewis*, 477 Fed.Appx. 79, 82 (4th Cir. 2012) (holding counsel's performance was deficient when he incorrectly informed client that he was eligible for career offender status under the USSG). On the other hand, an inaccurate prediction about a defendant's sentence is generally an insufficient basis for a claim that counsel's representation was deficient.

---

[1] In its memorandum, the Government asserts that Vinson's petition is barred by the appellate waiver in his plea agreement. Because the petition can be resolved on other grounds, the Court will not address the appellate waiver issue.

*See Little v. Allsbrook*, 731 F.2d 238, 241 (4th Cir. 1984) ("an attorney's 'bad guess' as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea").

Construing Vinson's petition liberally, he appears to argue that counsel's representation was ineffective because (a) he failed to challenge the Government's sentencing calculations and (b) he told Vinson the calculations accurately represented Vinson's appropriate sentencing range. ECF No. 246 at 3, 8-9. Neither assertion is sustainable.

The transcript from the sentencing hearing clearly demonstrates that counsel in fact did question the Government's application of the USSG on the grounds that Vinson's criminal history had been overrepresented:

> COUNSEL:
>
> Mr. Vinson is 38 years old. He has an extensive history of substance abuse. His criminal history consists of two prior possession of controlled substance, two prior possession with intent to distributes, which are the predicates for the career offender. One of them is for four grams of cocaine. Another is for 116 grams of PCP. I do not believe that this is what Congress was eyeing when they drafted the provision for career offender. I think they were looking for high level drug traffickers or very violent individuals and I think Mr. Vinson squeaked into this category and I believe his criminal history is overrepresented.

ECF No. 287-1 at 42:13-25. The Court responded by noting that under the USSG, it would need to make a five-level downward adjustment to Vinson's criminal history category to justify a sentence within the range proposed by the plea agreement. *Id.* at 48:7-13. Accordingly, the plea agreement was extraordinarily beneficial to him, settling upon a sentencing range of 144 to 180 months – not even half of what the range originally established. ECF No. 163 at 5.

Moreover, Vinson's claim that he was "grossly misinformed" by counsel as to the accuracy of the Government's sentencing recommendation is without merit. He argues that the Government erroneously applied three separate USSG provisions when it calculated his

sentencing range: (1) the career offender classification under Section 4B1.1; (2) the increased base offense level under Section 2K2.1(a)(2); and (3) the two-level sentence enhancement under Section 2K2.1(b)(1). ECF No. 246 at 3, 7-8. None of these arguments holds water.

*1. Section 4B1.1 career offender classification (as to Count One of the indictment)*

Vinson says his classification as a career offender was in error because his prior conviction under 48 D.C. Code § 904.01 was not a sufficient Section 4B1.1 predicate conviction. ECF No. 246 at 4. He cites the Supreme Court's decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016), which, according to him, held that a career offender enhancement could not be made on the basis of a prior conviction under a statute broader in scope than the "generic definition" of the crime. ECF No. 246 at 3. By prohibiting mere "social sharing" of a controlled substance, Vinson argues, Section 904.01 covers a broader scope of conduct than the USSG definition for a controlled substance offense, which requires an act of "distribution." *Id.* at 4. The Court disagrees.

The USSG career offender classification applies to adult defendants "with at least *two prior felony convictions* of either a crime of violence or *a controlled substance offense.*" USSG § 4B1.1(b) (Nov. 2016) (emphasis added)[2]. The USSG define a "controlled substance offense" as:

> ....an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, *distribute*, or dispense.

USSG § 4B1.2(b) (Nov. 2016) (emphasis added). When determining whether a prior conviction triggers a Section 4B1.1 enhancement, courts are obliged to apply a categorical

---

[2] Of the two prior convictions on which Vinson's career offender status was predicated, Vinson only challenges the conviction under 48 D.C. § 904.01; a discussion of his other conviction is therefore omitted.

-5-

approach, looking "only to the fact of conviction and the statutory definition of the prior offense." *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990)). For a prior conviction to qualify as a Section 4B1.1 predicate offense, "the elements of the prior offense must correspond in substance to the elements of the enumerated offense." *Id.* (alterations and internal quotations omitted). In the case of controlled substance offenses, courts must compare the elements of the statute under which the defendant was previously convicted with the definition provided for controlled substance offenses in the USSG. If the elements of the statute prohibit a broader range of conduct than the USSG definition, the prior conviction cannot be used for a Section 4B1.1 sentence enhancement.[3]

In 2008, Vinson pled guilty in the District of Columbia to Unlawful Possession With Intent To Distribute a Controlled Substance. ECF No. 177 at 10. The statute under which he was convicted provides that "it is unlawful for any person knowingly or intentionally to manufacture, distribute, or possess, with intent to manufacture or distribute, a controlled substance." 48 D.C. Code § 904.01(a)(1). On its face, Section 904.01 is plainly an offense that prohibits "the possession of a controlled substance…with intent to manufacture, import, export, distribute, or dispense." USSG § 4B1.2(b) (Nov. 2016).

Vinson argues that a separate provision of the D.C. Code, Section 904.09, extends the scope of Section 904.01 to include "social sharing" of controlled substances as a means of violating the statute. Section 904.09 punishes "any person who attempts or conspires to commit" any offense under, among others, Section 904.01. His argument is nearly identical to the argument made by the petitioner in *Carcamo v. Lynch*, which also involved a prior Section

---

[3] The *Mathis* decision cited by Vinson in his memorandum held that the categorical approach was required for sentence enhancements under the Armed Career Criminal Act. *Mathis* did not discuss the career offender provision of the USSG and is therefore inapplicable here.

904.01 conviction. *See* 648 F. App'x 306, 313 n.6 (4th Cir. 2016) (unpublished). The Fourth Circuit rejected the petitioner's argument on the grounds that "social sharing" amounts to distribution, and that distribution of controlled substances does not require commercial dealing. *See id.* (citing *United States v. Washington,* 41 F.3d 917, 919 (4th Cir. 1994)).

In view of Fourth Circuit precedent and the plain language of D.C. Code Section 904.01 and USSG Section 4B1.2(b), Vinson's counsel could have reasonably concluded that Vinson was properly classifiable as a career offender under the USSG.

2. *Section 2K2.1(a)(2) enhancement (as to Count Three of the indictment)*

Vinson next claims that his increased base offense level under USSG Section 2K2.1(a)(2) was erroneous for the same reasons raised in his Section 4B1 challenge. Section 2K2.1(a)(2) provides for an increased base offense level of 24 for crimes involving firearms "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." USSG § 2K2.1(a)(2) (Nov. 2016).

Section 2K2.1 adopts by explicit reference the same definition for controlled substance offenses as that provided under Section 4B1.2(b). Applying the categorical approach demonstrates that D.C. Code Section 904.01 is a controlled substance offense under USSG Section 4B1; likewise, Section 904.01 meets the requirements for a predicate conviction under Section 2K2.1(a)(2). Vinson's counsel would therefore have been reasonable in concluding that the Section 2K2.1(a)(2) increased base offense level was appropriate in Vinson's case.

3. *Section 2K2.1(b)(1) enhancement (as to Count Three of the indictment)*

Finally, Vinson claims that he should not have been subject to an offense level increase under Section 2K2.1(b)(1) because he did not *personally* possess three or more firearms at the

time of his arrest. *See* ECF No. 246 at 7-8. Section 2K2.1(b)(1) provides for an offense level increase of two levels if three or more firearms were involved in an offense. USSG § 2K2.1(b)(1) (Nov. 2016). Whether a defendant actually possessed or sought to possess firearms is irrelevant for the purpose of Section 2K2.1(b)(1). *See United States v. Damon*, 595 F.3d 395, 401 (1st Cir. 2010) (holding that "an offense 'involving' three or more firearms is not limited to situations where the defendant personally possessed at least three firearms"). Courts applying Section 2K2.1(b)(1) may consider any firearms that were "within the same course of conduct or…common scheme or plan" of which the defendant was a part. *See United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998). Clearly multiple firearms were involved in this conspiracy.

Vinson agreed with others to carry out an armed robbery of between ten and twelve kilograms of cocaine. ECF No. 177 at 6. He knew that the stash house where the cocaine was stored would be secured by armed guards and anticipated that it might be necessary to use force to circumvent and, if necessary, kill the guards. *Id.* After Vinson's arrest, law enforcement recovered three firearms from a vehicle planned for use during the robbery. *Id.* The firearms were unquestionably intended as tools for acquiring cocaine from the stash house. It is Vinson's participation in a crime *involving* three or more firearms, not his possession or use of the firearms, that brings him within the scope of Section 2K2.1(b)(1). His contention that a Section 2K2.1(b)(1) enhancement requires actual possession flies in the face of judicial precedent and the plain language of the USSG. His counsel could therefore have reasonably concluded that the Section 2K2.1(b)(1) enhancement was appropriate.

Because the Government's sentencing calculations were based on a correct application of the USSG, Vinson's counsel did not act unreasonably by advising him to accept the calculations as true and enter a guilty plea.

B. PREJUDICE

When a petitioner seeks to vacate a sentence based on a guilty plea, the prejudice element of the *Strickland* test requires the petitioner to prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). To meet this standard, the petitioner must prove not only that he would have proceeded to trial, but that doing so would have been "objectively reasonable in light of all the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).

Vinson makes no claim that he would have proceeded to trial, or that it would have been objectively reasonable to do so, had counsel represented him differently during the plea negotiations and sentencing process. Even if Vinson had properly asserted and proven that his decision to plead guilty was caused by reliance on counsel's advice, proceeding to trial would not necessarily have been a more reasonable decision under the circumstances. The plea agreement, which the Court accepted, recommended a custody range far below that established by the USSG, a fact emphasized by the Court several times during Vinson's Rule 11 plea colloquy. *See, e.g.*, ECF No. 283 at 22:9-24. By pleading guilty, Vinson received a prison sentence of 156 months, though he was eligible for a sentence of between 262 and 327 months. ECF Nos. 206, 163 at 4. He can hardly claim to have suffered prejudice when he was spared between 106 and 171 months of prison time by following counsel's advice and accepting the agreement instead of proceeding to trial.

**III.**

For all these reasons, Vinson's Motion to Vacate under 28 U.S.C. § 2255, ECF No. 245, is **DENIED**.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**July 1, 2019**